**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN BUTLER, | Case No. 1:12-cv-0069-SMS |
| Plaintiff, | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Helen Butler, by her attorney, Steven Rosales, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act").[1] The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[2] Following a review of the complete record and applicable law, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the Commissioner's determination.

---

[1] The DIB and SSI regulations relevant in this case are virtually identical; as such, only the DIB regulations will be cited in the remainder of this opinion. Parallel SSI regulations are found in 20 C.F.R. §§ 416.900-416.999 and correspond with the last digits of the DIB cite (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).
[2] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 9 & 10).

## I. Procedural History

Plaintiff claims she has been disabled since September 4, 2004. On February 28 and May 4, 2006, she applied for DIB and SSI income. AR 105, 108, 122. The agency denied benefits, and on November 21, 2008, ALJ James P. Berry found Plaintiff not disabled. AR 7-13. Plaintiff appealed, and this Court remanded on July 16, 2010, with instructions to further consider the testimony of a lay witness and the evaluation of a vocational expert. AR 701-17.

On August 8, 2011, ALJ Berry conducted the remand hearing. Plaintiff appeared with counsel and testified. Also testifying were Michael Gurvey, M.D., an impartial medical expert who appeared telephonically at the invitation of the agency; Linda Ferra, an impartial vocational expert; and Shauna Marie De La Cruz, Plaintiff's daughter. AR 621-51. In a decision dated August 29, 2011, ALJ Berry again denied Plaintiff's application. AR 602-13. Plaintiff appealed. Doc 1.

## II. Factual Record

### A. Testimony of Plaintiff and Plaintiff's Daughter

Plaintiff was born in 1951 and has a high school education and past work as a stock clerk and cashier. AR 126. Prior to her disability date, she was employed by a grocery store for eleven years. AR 312. When Plaintiff applied for benefits, she alleged she could not work because of a herniated lumbar disc with multilevel spondylosis and emphysema. AR 126. At the 2008 hearing, she further alleged she could not work because of knee pain. AR 27-28.

At the 2011 hearing, Plaintiff she said she had become more reliant on her cane since the hearing three years prior. She has fallen several times. She must use the cane all the time, including inside her house. AR 31, 639-41. Using her cane, she could stand fifteen minutes total, walk fifteen to twenty minutes, and sit fifteen to twenty minutes in eight hours. She spends all day in her recliner or in bed. AR 642-43. She stated that her ability to lift had declined, from five to ten pounds at the previous hearing, to four pounds now. She could not carry that amount of weight "very far."

Plaintiff lives with her daughter, who also testified. She said that Plaintiff can hardly do anything for any amount of time because her knees swell. Plaintiff has a hard time climbing the three steps into their house. She stays in the same clothes for three or four days because she has a hard time dressing, and it has been that way since the date of the injury in 2004. Plaintiff will try to do

dishes for two or three minutes, then sit for 15 to 20 minutes. She has witnessed Plaintiff fall a couple of times this year, and says that she tries to use a cane all the time. At the grocery store, Plaintiff holds onto the shopping cart. She cannot carry boxes or a gallon of milk, and has problems with small things. Plaintiff moans and groans and breathes heavily, and her arms shake; it is obvious she is in excruciating pain. AR 644-46.

### B. Medical Record

#### 1. Initial Treatment

On September 4, 2004, Plaintiff developed a sharp back pain while at work. In the immediate aftermath of her injury, Plaintiff was examined by Dr. Irene Sanchez. Upon examination, Dr. Sanchez noted that Plaintiff could not stand erect and had a "slow" gait. AR 292. X-rays of Plaintiff's lumbosacral spine displayed an "abnormality" at L5-S1 that she believed indicated spondylolisthesis. AR 292-93. She diagnosed lumbar radiculopathy, right low extremity, but ruled out a herniated disc. AR 293.

An MRI was performed on September 27, 2004. AR 248. Dr. William Dunn interpreted the findings as evidencing mild degenerative changes with no disc protrusion at T12-L1. AR 248. He noted degenerative changes of the lumbar spine with a focal, moderately large protrusion and extruded component of the right side at L5-S1 compressing the S1 root and the ventral lateral aspect of the thecal sac. AR 249. He also noted a broad annular tear and protrusion at the L3-4 level lateralizing more to the left of midline and bulging into the neural foramen. *Id.*

At a follow-up examination in October 2004, Dr. Sanchez discussed the MRI findings with Plaintiff. AR 288. Plaintiff seemed to have somewhat less discomfort and stood more erect, although she still walked with a gait favoring the left leg. *Id.* She referred Plaintiff to Dr. Brian Grossman, an orthopedic surgeon, for a consultative examination. AR 289.

Dr. Grossman saw Plaintiff on October 18, 2004. Plaintiff complained of right hip pain and pain running down her right leg. AR 278. Dr. Grossman reviewed the recent MRI and examined Plaintiff. AR 279. Dr. Grossman diagnosed Plaintiff with disc extrusion, right L5-S1 with radiculopathy. AR 280. He advised that Plaintiff could return to work, but restricted her to standing no more than 6 hours a day, with 10 minute breaks each hours, and also restricted her to lifting no

more than 10 pounds. *Id.* At a follow-up examination on November 1, 2004, Plaintiff reported that in the previous week or two, her significant right leg pain had improved but that she still had pain in the right buttocks. AR 270-71. Dr. Grossman diagnosed a herniated lumbar disc at L5-S1 with radiculopathy. AR 271. In a follow-up examination a month later, Dr. Grossman reported that Plaintiff had received her first epidural treatment, which resulted in no more radiating pain, but some low back pain remained. AR 262. He reiterated his previous diagnosis but expanded it to include degenerative discs at L1-2, L2-3, L3-4 and L4-5, with disc protrusion and annular tear at L1-2 and L3-4. AR 263. He restricted Plaintiff to lifting no more than 10 pounds and to no more than occasional bending, stooping and standing. *Id.*

Between January 2005 and November 2006, Plaintiff was treated by Dr. Russell Nelson, an orthopedist. During this period, Dr. Nelson diagnosed Plaintiff with a herniated disc at L5-S1 with disc injuries above that point, as well as multilevel spondylosis. Dr. Nelson documented Plaintiff as experiencing intermittent periods of numbness and tingling in the feet. *See id.* Treatment included epidural injections which improved the pain, occasional pain medication, a TENS (transcutaneous electrical nerve stimulation unit), and recommended home exercise. *Id.* He reported that an MRI showed "multiple areas of abnormality" in her spine. AR 386. Dr. Nelson noted that Plaintiff seemed to benefit from epidural treatments. AR 402.

Between March 2007 and May 2008, Plaintiff saw Dr. John Larsen. Dr. Larsen noted tenderness in Plaintiff's lumbar and paraspinal region, and noted that she made frequent complaints of persistent back and leg pain. Dr. Larsen diagnosed degenerative disc disease and lumbar disc herniation at L5-S1 with spondylosis and stenosis. *See id.* A new MRI was performed in March 2007.[3] Dr. Larsen reported that it showed a 4 mm disc protrusion at L4-S1. AR 582. He characterized Plaintiff as "temporarily totally disabled." He recommended that Plaintiff be given epidural treatments for her symptoms, as well as other possible "invasive" treatment. AR 582, 586.

In June 2008, Plaintiff visited Kern Medical Center. Although she reported problems "ambulating," she had "no problems" with activities of daily living. AR 592.

---

[3] Dr. Charles Taylor interpreted this MRI as evidencing a posterior disc protrusion at L5-S1, with a disc bulge at L2-3 and "severe" degenerative disc disease at L1-2, and noted "[c]onsiderable paramagnetic artifact from L1 above caused by a quarter moon shaped calcific density in soft tissues posterior to the T12-L1 level." AR 481-82.

4

### 2. **Dr. Choi**

In July 2005, Plaintiff saw Stephen Choi, M.D., a board-certified orthopedic surgeon, for a qualified medical examination. AR 312. Plaintiff reported to Dr. Choi that she had suffered "minor intermittent" back pain since January 2004. AR 312. She reported also an onset of "sharp pain" while stocking cases of milk and juice at work on September 4, 2004. *Id*.

Dr. Choi reviewed Plaintiff's September 2004 MRI and noted that it showed "diffuse degenerative disk change in the lower lumbosacral spine." AR 313. He noted that it revealed "a large right paracentral bulging disk, either protruded or extruded, causing stenosis, and causing S1 impingement" in the L5-S1 region. *Id*.

Dr. Choi characterized Plaintiff's complaint as "mechanical pain." Plaintiff told Dr. Choi that "with rest, there is no pain," and that her pain rose in proportion with increased activity. AR 313. Plaintiff reported that she could lift a maximum of 10 pounds and sit for a couple of hours in an entire day. *Id*. She said that standing became difficult after about 30 to 45 minutes and that she could not walk for more than 10 minutes. *Id*. She denied waking up at night with pain and denied numbness or tingling in her lower extremities. *Id*.

Dr. Choi described Plaintiff as walking with a "slow, steady gait." AR 315. He saw no limping or antalgic gait but noted some stiffness in her back and a loss of posterior lordosis. *Id*. He did not believe she was in acute distress. *Id*. He described her back range of motion as "compromised." *Id*.

Dr. Choi described Plaintiff's condition as a low back strain without radiculopathy. AR 318. He also diagnosed "[p]robable diskogenic myofascial strain with obesity and deconditioned low back." AR 319. Dr. Choi believed that Plaintiff aggravated a chronic, ongoing, degenerative disc condition in September 2004, and that this condition resulted from her obesity. AR 319. He noted that when a patient has a "deconditioned back" and is overweight, recovery may be "extremely difficult and compromised, unless the patient loses the excess weight. *Id*. He believed that the injury she sustained in September 2004 was "gradually resolving" but that because of her weight and deconditioned back, "she still gets mechanical pain with activities." *Id*. He characterized her condition as permanent and stationary and believed "she had reached maximal medical

improvement." *Id.* He believed that Plaintiff should be precluded from lifting more than 25 pounds and should avoid bending and twisting of the back for the next six months to a year while her deconditioned back was rehabilitated. AR 320. He believed her chronic degenerative disc disease would not improve if she did not lose weight and that she could not return to her past work as a deli manager due to the "extreme demands" placed on her lower back from that work. AR 321.

### 3.   Ms. Vaughan

In May 2006, Plaintiff underwent a vocational evaluation by Susan Vaughan, a Certified Vocational Counselor. AR 322-334. She listed Plaintiff's transferable skills as use of cash register, money handling, customer service, and stocking. Plaintiff retained the abilities to follow instructions, interact with peers, accept supervision, work independently, perform tasks requiring memory, maintain perseverance on tasks, and express herself. She retained the ability to maintain perseverance performing physical activities while sitting, but not while standing. Plaintiff had no limitations in mobility, communication, self-care, or interpersonal skills, but had a serious limitation in work skills and work tolerance. Ms. Vaughan thought Plaintiff had a learning disability, and assessed her in the below average range in academic areas and work pace.

Plaintiff said her discomfort increased when standing. She could stand for 35 to 50 minutes and sit for more than 60 minutes, but was not assessed on lifting and carrying because there was no specific work restriction in that area. Ms. Vaughan determined that Plaintiff could perform sedentary positions with sitting no more than 45 to 60 minutes. She recommended jobs as a cashier with a sit-stand option, a light stock clerk, and a dispatcher.

### 4.   Dr. Bhangoo

In July 2006, Plaintiff was examined by Dr. Sarupinder Bhangoo. Plaintiff told him that she could drive and, in fact, drove to the examination. AR 359. She told him that she could take care of her personal needs and go to the store. *Id*. She stated that she worked in the garden "occasionally" but not on "bad days" when her back was "really hurting." *Id*. She denied experiencing any numbness or weakness in her extremities. *Id*.

Dr. Bhangoo diagnosed Plaintiff with degenerative lumbar disc disease at L5-S1 and T4. AR 361. A straight-leg raising test was negative bilaterally in the seated and supine positions. *Id.* There

6

was no paravertebral muscle spasm or tenderness, crepitus, effusion, or swelling. *Id.* Motor strength was good, 5/5 in all extremities. Dr. Bhangoo noted that her medical records indicated a history of Chronic Obstructive Pulmonary Disease ("COPD"). *Id*. He documented that she was prescribed numerous medications, including several for pain and inflammation, including Naproxen and Hydrocodone, as well as aspirin. AR 359.

Plaintiff reported that she believed that her main barrier to working was her back pain. AR 362. She described her current back pain as 1 on a scale of 1 to 10, although she said it can vary as high as a 7. Dr. Bhangoo opined that the higher level of pain was "confirmed by evidence of herniation on an MRI done in 2004." *Id.* Nevertheless, Dr. Bhangoo found that Plaintiff did not have any limitations caused by her condition. AR 362. He noted that the day of the examination must have been one of her "good days" because she could bend and touch her toes, take off her shoes and socks and climb onto the exam table without any difficulty. *Id.*

In light of the MRI report and his examination and observation of her, Dr. Bhangoo opined that Plaintiff could stand and/or walk for at least six hours in an eight-hour day, sit for eight hours in an eight-hour day, lift and carry 50 pounds occasionally and 25 pounds frequently, and had only a postural limitation related to bending and stooping. *Id.* She did not need any assistive devices and had no manipulative limitations. *Id.* Dr. Bhangoo characterized Plaintiff's "maximal functional capacity" as "medium with limitations of bending and stooping to an occasional basis." *Id.*

### 5. **Non-Examining Agency Consultants**

In August 2006, non-examining state agency consultant Dr. L. V. Bobba conducted a Residual Functional Capacity ("RFC") assessment. Dr. Bobba concluded that Plaintiff had a primary diagnosis of degenerative disc disease with obesity and "mild" COPD. AR 367. Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for six hours each in an eight-hour workday; push/pull without limitation; climb, balance, stoop and crawl frequently; and stoop and crouch occasionally, with no manipulative, visual or communicative restrictions. AR 368-70. In March 2007, non-examining state agency consultant Dr. A. M. Khong conducted a second RFC assessment. Dr. Khong documented virtually the same findings as Dr. Bobba, but restricted Plaintiff to only occasional climbing, stooping and crawling. AR 420-21.

### 6. John Brazill – Bakersfield Pain Management

In September 2007, Plaintiff started treatment at Bakersfield Pain Management. John Brazill, M.D., the pain specialist, reviewed records showing that Plaintiff had good pain relief from epidural steroid injections, but little relief from physical therapy, heat, and cold. Examination showed that Plaintiff had marked tenderness in the lower lumbar region in the midline and over the left sacroiliac joint. Her lumbar range of motion was significantly limited. She had 5/5 power in the upper extremities, but 3/5 power in the lower extremities. Straight leg raising was negative bilaterally. Faber's test was positive on the right but negative on the left. Dr. Brazill recommended epidural injections and neuropathic medication. AR 551-55.

Plaintiff saw Dr. Brazill monthly. On October 31, 2007, Plaintiff told Dr. Brazill that her symptoms were 50% better after the injection. AR 543. An injection in January 2008 also had a good result. AR 532. In June 2009, her back pain and left knee pain were a "3" on a scale of 1 to 10. Plaintiff said her back pain was worse in the evening after she had been active during the day. She walked with a cane. She had mild tenderness in the midline of the lower lumbar spine. She had mild edema in both lower extremities. She had swelling over the left knee and sharp pain in both feet. The doctor recommended continued medications and home exercises. AR 1110-12. Plaintiff also experienced some relief using a TENS unit. AR 1112. Dr. Brazill advocated for a permanent home TENS unit and acupuncture, but they were denied by the Workers' Compensation carrier. AR 1084-1109. In November 2009, Plaintiff's prescriptions for Norco and Soma were denied because they were not found in her urine test. Plaintiff admitted that she used these drugs only occasionally, not on a daily basis. AR 1084. Acupuncture was approved, and Plaintiff improved after five treatments. Dr. Brazill said it made her more functional. AR 1063. Plaintiff requested additional treatment. In April 2010, Dr. Brazill reported that she obtained excellent relief from acupuncture. AR 1056.

For over a year, from June 2009 to July 2010, Plaintiff's monthly self-reported pain score was consistently 3/10 or lower. AR 609, 1038, 1044, 1050, 1065, 1072, 1078, 1084, 1090, 1095, 1100, 1105, 1110. In August 2010, Plaintiff complained that her pain increased substantially, and reported a pain score of 8. AR 609-610, 1271. Also in August 2010, Dr. Brazill completed an RFC Questionnaire. AR 1034-35. Plaintiff could stand and walk for one-half hour or less out of eight and

8

sit for one hour out of eight; could lift and carry up to ten pounds occasionally; could handle and perform fine manipulation occasionally but never push or pull; could not bend, stoop, squat, crawl, climb, crouch, or kneel; could rarely reach up or forward; and could drive automotive equipment rarely, but never work around unprotected heights, moving machinery, marked temperature changes, pulmonary irritants, or noise. He attributed Plaintiff's limitations to "severe back pain" and knee pain, more severe on the left, arising from a work-related injury on September 4, 2004. AR 1124. As objective support for the back pain, he cited a lumbar MRI showing a disc protrusion at L5-S1. *Id.*

In October 2010, Dr. Brazill completed a physician statement for Plaintiff's insurance company. AR 1262-63. She could not stand or walk more than 15 minutes each hour and could not lift more than 15 pounds. On the same date, Dr. Brazill administered epidural steroid injections to Plaintiff's LS-S1 spine. AR 1258. On follow-up, Plaintiff's back and leg pain improved. AR 1253.

In November 2010, Plaintiff told Dr. Brazill her back pain was improved, but she had a shock sensation in the right leg and her right foot was numb. AR 1248. However, the exam notes stated her sensory exam was unchanged from the prior exam, even though she did not have this symptom at the prior exam. AR 1254.

In May 2011, a new MRI showed severe degenerative changes at L3-4, fatty changes in the adjoin endplate, and moderate foraminal narrowing on the left side. There was a diffuse disc bulge at L4-L5 to the right of midline causing slight impression the ventral thecal sac, severe degenerative changes in the facet joint, severe hypertrophy of ligamentum flavum, and mild narrowing of the central bony canal. A disc protrusion previously seen at LS-S1 had resolved. AR 1276-77.

### 7. Dr. Gomez – Plaintiff's Knee Impairment

X-rays of Plaintiff's left knee in May 2009 indicated moderate degenerative joint disease, joint effusion, and soft tissue calcifications. AR 1015. Plaintiff rejected a total knee replacement. Dr. Arturo Gomez recommended physical therapy and cortisone injections. AR 1012. In July 2009, Plaintiff said she felt no relief from the injections, and wanted a knee replacement. Dr. Gomez thought it might be too early, and strongly recommended that Plaintiff "really put some effort into physical therapy." AR 1004. Plaintiff began physical therapy, but the therapist noted that Plaintiff had previous noncompliance with her home exercise program. AR 994. In December 2009, Plaintiff

1  told the physician assistant at the orthopedic clinic that her left knee was doing much better. She
2  could ambulate well and had no pain. She was discharged from the clinic. AR 968. Plaintiff
3  complained to Dr. Brazil of knee pain, which he included in her pain management treatment.

4        **C.**       **Testimony of Michael Gurvey, M.D.**

5        The ALJ invited Michael Gurvey, M.D., to testify at the hearing. Dr. Gurvey reviewed all of
6  the medical evidence. He stated that Plaintiff's impairments were low back pain with degenerative
7  disc disease, left knee pain, obesity, and a variety of general conditions including hypertension,
8  insomnia, and a gastrointestinal impairment. Her back and knee impairments did not meet or equal
9  the listings for major dysfunction of joint(s) (1.02) or disorders of the spine (1.04). From September
10 4, 2004 to the present, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds
11 frequently; sit six hours, and stand and walk four to six, out of eight; had no need for an assistive
12 device (such as a cane); could not climb ropes, ladders, or scaffolds, but could kneel; and had no
13 restrictions on pushing or pulling, and no manipulative, audio, visual, or environmental limitations.
14 However, he recommended avoiding unprotected heights as a prophylactic.

15       **D.**       **Testimony of Vocational Expert**

16       Ms. Ferra testified as the vocational expert. She stated that Plaintiff had a work history of
17 stock clerk (heavy, 4) and cashier (light, 3).[4] Ms. Ferra then assumed a person of Plaintiff's age (53
18 to 59), education (high school), and work history, and testified whether this person would be
19 disabled under various hypothetical RFCs. *Cf.* 20 C.F.R. §404.1560(c)(1).

20       In the first RFC, the person had a combination of severe impairments; could lift and carry 20
21 pounds occasionally and 10 frequently; could stand, walk, and sit six hours each; and could
22 occasionally climb, crouch, crawl and kneel. Ms. Ferra stated that the person would not be disabled;
23 she could perform Plaintiff's past work as a cashier, though not her past work as a stock clerk.

24       The second hypothetical RFC corresponded to the assessment of Dr. Gurvey. The person had
25 a combination of severe impairments; could lift and carry 20 pounds occasionally and 10 frequently;

---

[4] Each job title is followed by a strength rating and a Specific Vocational Preparation number in parentheses. The strength rating captures the physical demands and frequency of certain basic activities. The frequency may be "never," "occasional" (up to one-third of the workday), "frequent" (from one-third to two-thirds), or "constant" (two-thirds or more). The Specific Vocational Preparation ranks, from one to nine, the time required to learn facility in the job. *See* Dictionary of Occupational Titles (4th ed.1991) Appendix C.

10

could sit six hours, and stand and walk four to six hours, out of eight; could not climb ropes, ladders, or scaffolds; could occasionally crawl and kneel; and could not be exposed to unprotected heights. Ms. Ferra stated that the person would not be disabled. Although she could not perform Plaintiff's past work, she could perform the requirements of representative occupations such as assembler (sedentary, unskilled—2,700 jobs in California, 27,000 nationally), account clerk (sedentary, unskilled—3,700 jobs in California, 37,000 nationally), or order clerk (sedentary, unskilled—2,700 jobs in California, 27,000 nationally). However, this person would be disabled if she had to miss at least three days a week because of pain.

The third hypothetical RFC corresponded to Plaintiff's description of her limitations. This person had a combination of severe impairments; could lift four pounds maximum, stand fifteen minutes total, walk fifteen to twenty minutes, and sit fifteen to twenty minutes; had difficulty gripping and grasping small objects; and needed a cane for walking. This person would be disabled.

### III. The ALJ's Decision

The ALJ found that Plaintiff had not met her burden under the Act to show that she was disabled. Pursuant to 42 U.S.C. § 1382c(a)(3)(A), to be disabled, a claimant must be unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. In explaining his decision, the ALJ followed the five-step sequential analysis as required under 20 C.F.R. §§ 404.1520 (a)-(f):

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. |

11

| | |
|---|---|
| Step five: | Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

Plaintiff had not engaged in substantial gainful activity since September 4, 2004. She had four severe medically determinable impairments: degenerative disc disease of the lumbar spine, hypertension, a history of knee pain, and obesity. Her impairments, considered singly or in combination, did not meet or equal any listed impairments. At Step Four, the ALJ adopted Dr. Gurvey's RFC assessment in part (corresponding to the vocational expert's first hypothetical). Plaintiff was not disabled, as she could perform her past work as a cashier. In the alternative, the ALJ adopted Dr. Gurvey's RFC assessment in full (corresponding to the second hypothetical). Plaintiff could not perform past work, but she could perform other work described by Ms. Ferra.

## IV.    Discussion

### A.    Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla," *id.,* but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the Court may not substitute its judgment. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996).

### B.    The ALJ Properly Found Plaintiff Not Disabled at Step Four

Plaintiff argues that the ALJ erred in finding that Plaintiff could do her past work as a cashier, based on the ALJ's failure to provide a legally sufficient rationale for partially rejecting Dr. Gurvey's RFC assessment. Defendant replies that the ALJ properly rejected that portion of Dr.

Gurvey's assessment; and even if the ALJ had erred, the error was harmless, because Plaintiff would still not have been disabled at Step Five, even if the ALJ had adopted Dr. Gurvey's opinion in full.

### 1. **Had the ALJ Adopted Dr. Gurvey's Opinion in Full, Plaintiff Would Have Been Disabled**

Defendant suggests that the ALJ would have necessarily found Plaintiff not disabled even if he had credited Dr. Gurvey's opinion in full. This is not correct: Dr. Gurvey's RFC assessment was consistent with a finding of disability.

First, Plaintiff argues that it would not have been proper for the ALJ to rely on Dr. Gurvey for the proposition that Plaintiff's RFC was consistent with "light work." Plaintiff is correct, but for the wrong reasons. Plaintiff invokes the rule that opinions on the ultimate question of disability are reserved to the commissioner, but that rule is not at issue here. *See* 20 C.F.R. 1527(d)(2). Indeed, this regulation expressly provides that the ALJ may consider the opinions of medical sources on issues including functional capacity, which is what the ALJ purported to do. *Id*. Plaintiff relies upon an unpublished, overturned district court case which only mentions this rule in passing.

Instead, the reason why the ALJ could not have relied upon Dr. Gurvey for this opinion is simply because Dr. Gurvey never actually expressed this opinion. He confirmed that Plaintiff could do light work "as [he] outlined it in [his] … testimony." AR 628. But his testimony did not outline the full range of light work. He said that he "would place [Plaintiff] in the light category of lifting and carrying" and that her push-pull restrictions were also consistent with the "light" category. This assessment satisfies part of the definition of light work, which includes a lifting and carrying component ("lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds") and a push-pull component ("sitting most of the time with some pushing and pulling of arm or leg controls"). 20 C.F.R. § 404.1567(b). However, the full range of light work also requires "a good deal of walking or standing." *Id*. While Dr. Gurvey offered an assessment of Plaintiff's walking and standing limitations (sit six hours, stand and walk four to six hours), he never opined whether this was consistent with light work. Indeed, the regulations specify that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. This exceeds Dr. Gurvey's RFC assessment.

In addition, Dr. Gurvey's RFC was consistent with Plaintiff being disabled. True, the vocational expert stated that Plaintiff's limitations would allow her to do sedentary work. However, Plaintiff should nevertheless have been found disabled, as she would be excused from doing sedentary work by the medical-vocational guidelines (the "grids"). *See* C.F.R. Pt 404, Subpt. P, App. 2. Under the grids, an individual who is approaching advanced age (50-54) or of advanced age (55+) is disabled if her RFC is sedentary, she can no longer perform vocationally relevant past work, and she has no transferable skills or recently completed education. Rules 201.04, 201.06, 201.12, 201.14. Plaintiff satisfies these rules. The vocational expert limited her to sedentary work; she cannot (by assumption) do her past relevant work; and although she has skills as a cashier, AR 607-08, the vocational expert limited her to unskilled work, none of which would involve her experience as a cashier. The same conclusion would follow even if the grids were not determinative of whether Plaintiff was disabled. Under the regulations, Plaintiff cannot make an adjustment to other work— and would be disabled at Step Five—because she is of advanced age, is limited to sedentary or light work, and does not have skills that she can transfer to other skilled or semiskilled work. 20 C.F.R. §404.1568 (d)(4).

### 2. The ALJ Properly Rejected Dr. Gurvey's Opinion

The ALJ did not adopt Dr. Gurvey's RFC assessment. Instead, he adopted almost all of the assessment but made two changes: although Dr. Gurvey opined that Plaintiff could stand and walk four to six hours out of eight, the ALJ found that she could stand and walk for six hours out of eight. In addition, the ALJ dispensed with the prophylactic height limitation. These small changes had significant consequences: Given this RFC, Plaintiff could do her prior work as a cashier under the first hypothetical. Plaintiff argues that the ALJ should have adopted Dr. Gurvey's opinion in full.

The ALJ must explain whenever his assessment conflicts with an opinion from a medical source. SSR 96-8p. The weight that the ALJ gives to a medical source is based in part on the extent of the treating or examining relationship; the opinion's supportability in terms of evidence, particularly medical signs and symptoms; its consistency with the record as a whole; and whether the source is a specialist in the area of his opinion. *See* 20 C.F.R. § 404.1527.

In modifying these aspects of Dr. Gurvey's opinion, the ALJ explained that he found "no need" for the height requirement, and "no objective evidence" for the standing and walking limitation. Instead, the ALJ viewed these medical opinions as premised largely upon Plaintiff's own accounts of her symptoms. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.1999) (medical opinion may be disregarded where premised on claimant's discredited complaints). Dr. Gurvey explicitly stated that in adopting the four-to-six-hour RFC instead of the six-hour RFC, he gave "full credibility to the issues in the knee and the spinal [inaudible]." AR 638. He explained that "if she says that she hurts, I accept that she hurts." AR 638-39.

In turn, to find a claimant not credible as to her symptom testimony—absent affirmative evidence of malingering, and assuming her impairments could reasonably give rise to her reported symptoms—the ALJ must make specific credibility findings, supported by clear and convincing reasons, as to the intensity, persistence, and limiting effects of her symptoms. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006), *Schow v. Astrue*, 272 F. App'x 647, 654 (9th Cir. 2008). In determining credibility, an ALJ may engage in ordinary techniques of credibility. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). First, the evidence showed that Plaintiff's abilities were greater than she claimed. The consultative examination with Dr. Bhangoo revealed no limitations; Plaintiff could bend and take her shoes and socks off and on and climb up on the examination table. Plaintiff testified that she could only sit for 15-20 minutes, but she sat through the entire hearing of almost one hour without exhibiting discomfort. Plaintiff did not take her medication as prescribed, which suggested that her pain was not as severe as she described it. In addition, Plaintiff herself gave an inconsistent description of her abilities. At the hearing, she said she could only carry four pounds, "not very far;" she could not stand or walk without a cane, and even then could only stand, walk, and sit for roughly fifteen to twenty minutes in eight hours. This was inconsistent with her statement to Dr. Bhangoo that she could take care of her personal grooming needs, do household chores, drive, shop, and occasionally work in her garden. In June 2008, she reported that she had no problems with activities of daily living. She stated that she could prepare simple meals, sweep, wash dishes, watch television, read, and grocery shop. These activities were also inconsistent with the testimony of Plaintiff's daughter that she has a hard time dressing. Plaintiff's daughter said she saw her mother

fall, but the medical record makes no mention of falls. The ALJ found it unlikely that Plaintiff would have withheld this information from Dr. Brazill, whom she saw every month, since falls are increasingly important with age. The ALJ was also troubled by inconsistencies in Plaintiff's testimony regarding why she left work. She told Dr. Bhangoo that she quit working in 2002, but she reported in her Disability Report that she stopped working in September 2004. She told Dr. Choi that it was recommended that she returned to modified work, but no modified work was available, and then in January 2005, the store was closed. AR 312-13. This indicated that if there were modified work available, she would have returned.

There were also issues with Dr. Brazill's RFC assessment. Dr. Brazill assessed Plaintiff's pain level at 3/10 or less for more than a year, until the day of the RFC assessment when her pain level was at 8/10. The ALJ found this change to be abrupt and inexplicable. The ALJ also questioned the reliability of Dr. Brazill's notes. On one occasion, the notes stated that Plaintiff's sensory exam was unchanged from the previous month, even though she complained of a numb foot that she had not complained of before.

The ALJ thus gave adequate basis to discredit the symptom testimony which formed the basis of the part of Dr. Gurvey's RFC assessment that the ALJ rejected.

**V.    Conclusion**

The ALJ's conclusions were supported by substantial credible evidence. Accordingly, this Court hereby AFFIRMS the agency's determination to deny Plaintiff benefits. The Clerk of Court is directed to enter judgment for Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **April 10, 2013**              /s/ **Sandra M. Snyder**
                                         UNITED STATES MAGISTRATE JUDGE